IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ZHAOSHI TANG,<br><br>      Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A",<br><br>      Defendants. | Case No. 23-cv-03555<br><br>**Judge Thomas M. Durkin**<br><br>**Magistrate Judge** Honorable Jeffrey Cole |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTION AS TO DEFENDANTS IN SCHEDULE A

Plaintiff Zhaoshi Tang submits this Memorandum of Law in support of its Motion for Entry of a Preliminary Injunction against Defendants in Schedule A.

## I. INTRODUCTION.

Plaintiff Zhaoshi Tang ("Tang" or "Plaintiff") brings the present action against the defendants identified on Schedule A to the Complaint (collectively "Defendants") for federal patent infringement (Count I). As alleged in Tangs Complaint, the Defendants are promoting, advertising, distributing, offering for sale, and selling infringing products of Plaintiff's patented design through at least the fully interactive, e-commerce stores, operating under the seller aliases identified in Schedule A to the Complaint.

## II. STATEMENT OF FACTS.

### A. The **221 Patent.

Plaintiff's 'Iron Frame' patent (**221) and corresponding Products Plaintiff' 'IRON FRAME' products ("'IRON FRAME'"), based upon the **221 patent, are recognized as an inventive 'Iron Frame'. The 'IRON FRAME' consist of a platform encased 7 by several levels of framing that is perpendicular to the platform. The framing allows items to be placed on the platform and, due to the framing, the items will be not be inadvertently knocked off the platform. The IRON FRAME further contains means, such as screw holes, for attaching the IRON FRAME to a substrate, and hooks presented below the platform. Since the **221 patent issued in April 2022, the 'IRON FRAME' has increasingly become popular online, spurring tens of hundreds of copycat products. On information and belief, 'IRON FRAME' products are sold around the world via distributors and retail outlets, and hundreds of thousands of units around the globe have been sold. Online sales of 'IRON FRAME' products have represented a significant portion of Plaintiff' business. Plaintiff designed, patented, and launched its 'IRON FRAME' products long before Defendants' acts described herein. Plaintiff are the owners of **221 patent, whereby the **221 is valid and enforceable. A true and correct copy of the **221 patent is

attached to the Complaint (Dkt. 1, Exhibit A). The **221 is a valid patent, that was subject to intense pre-allowance examination. See, High Point Design LLC v. Buyer's Direct, Inc., 621 F. App'x 632, 9 (Fed. Cir. 2015) ("Design patents are presumed to be valid."); See also, 35 U.S.C. § 282.

**B.     Defendants' Unlawful Activities.**

The success of the 'IRON FRAME' product has resulted in it being copied. Defendants intentionally copied the 'IRON FRAME' design due to its market success, including online market success, which resulted from the 'Infringing Products' with safety buckles preventing hanging items from falling when attached to the 'Iron Frame', even in high wind. Plaintiff have established that Defendants sell Infringing Products to consumers in the 8 United States and the State of Illinois, including within the Northern District of Illinois. Internet Stores, like Defendants Internet Stores, i.e., those owned by The Partnerships and Unincorporated Associations of Schedule A, attached hereto, whereby they possess identifiers such as their respective ASINs ("Amazon Standard Identification Number"), are estimated to receive millions of visits per year and to generate over millions in annual online sales. A sample of Defendants' Infringing Products are shown in Exhibit B of the Complaint. As can be shown, the various copycat versions possess safety buckles which are totally the same as Plaintiff' 'IRON FRAME' Products, and thus they infringe the **221 patent. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from its accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of transaction logs from similar cases brought by other patent owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court.

III.     ARGUMENT.

A.     Standard for Issuance of a Preliminary Injunction.

On July 25, 2023, this Court granted TANG'S *Ex parte* Motion for Entry of a Temporary Restraining Order ("TRO"). The TRO authorized Tang to provide notice of these proceedings by electronically publishing a link to the Complaint, the TRO and other relevant documents on a website and by sending an e-mail to the email addresses identified in Exhibit 2 to the Complaint. At this time, the TRO has expired. Tang is now seeking the grant of a preliminary injunction on the same basis as the grant of the July 25 TRO.

B.     A Preliminary Injunction providing Relief is Appropriate.

Tang respectfully requests that this Court grant the preliminary injunction at this stage to prevent further infringing and unlawful conduct by Defendants. Courts addressing similar allegations of Internet-based counterfeiting have also issued preliminary injunctions following a temporary restraining order. *See, e.g., Junjie Peng v. The P'ships & Unincorporated Ass'ns Identified in Schedule A*, 321-cv-1344 (N.D. Ill. Sept. 14, 2021) (unpublished).

   i.    **This Court has already found that the requirements for a preliminary injunction have been satisfied.**

Since the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit, the requirements for entry of a preliminary injunction extending the TRO have been satisfied. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin. Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001 (citations omitted). A preliminary injunction may be issued upon a showing that (1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no remedy at law, (3) the balance of hardships tips in Plaintiff's favor, and (4) the public interest will not be disserved by the injunction. *Columbia Pictures Indus. Inc. v. Jasso,* 927

5

F.Supp. 1075, 1076 (N.D. Ill. 1996). By virtue of this Court's entry of the previous TRO, it has already found that the above requirements have been satisfied.

### ii. The Equitable Relief sought remains appropriate.

Tang requests grant of this preliminary injunction so that Defendants' accounts may be frozen at the third-party entities identified in the TRO. Amazon.com has provided Tang with information, including identification of financial accounts linked to the Seller Aliases which were offering for sale and/or selling infringing products. In the absence of the preliminary injunction, Defendants' may attempt to transfer financial assets to offshore accounts. Therefore, Defendants' accounts should be frozen for the remainder of the proceedings.

The amount of damages to which Tang is entitled as set forth in the Complaint far exceeds any amount contained in any of the Defendants' financial accounts. For example, Tang's prayer for relief requests damages to fully compensate Plaintiff from Defendants' accounts. *R-Boc Representatives, Inc. v. Minemeyer,* No. 11-cv-8433, at *9 (N.D. Ill. Aug. 15, 2017). In addition, and as established in Tang's TRO memorandum, many federal courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. *See, e.g., Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.,* No. 1:03-cv- 04844, 2005 WL 3115892 (N.D. Ill. Nov. 8, 2005). As such, an order granting a freeze on Defendants' assets should be granted.

## IV. CONCLUSION.

In view of the foregoing, Tang respectfully requests that this Court enter the preliminary injunction against all Defendants.

Dated: August 23, 2023                    Respectfully submitted,

/s/ Robert M. DeWitty
Robert DeWitty
DeWitty and Associates 712 H
Street, NE PMB 97684 Washington,
D.C. 20002